Thank you, Your Honor. May it please the Court? Counsel, my name is Suzanne Lee Elliott, and I am here on behalf of Cesar Sarasad. As the Court has already noted, we are here again in this case. I know the panel is fully aware of the facts, having… The Supreme Court seemed not to be. Well, there are competing views of the facts. That is not to say that they haven't been reviewed extensively. I don't think you have to spend your time on the facts. I will concentrate my arguments today on one of the remaining two arguments that Mr. Sarasad made in the district court before this case came here and then on to the Supreme Court and then bounce back to the district court. And it is the due process claim. Parties agree that a number of United States Supreme Court cases hold that a law must define the criminal offense with sufficient definiteness that ordinary people can, one, understand what is prohibited and, two, define the crime in such a manner that does not encourage arbitrary and discriminatory conduct. And in looking at the state's… Porter, Waddington, I can't remember which one we're on. I think it's Mr. Porter's response in this case. I think it's important to emphasize that the decision that we're looking at here today is that of the Washington State Supreme Court commissioner, which is at ER 63, decided in 2002 when he first heard this argument. And so it's important that when we apply the unreasonableness analysis, it be applied to that decision. And I submit to you that on both grounds, the commissioner's decision in this case is unreasonable. First, the litigation and history of this case demonstrates that Washington's accomplice liability statute as applied and the theories under which it should be construed do not tell ordinary people what is prohibited. And proof of that is in the jury's confusion in this case, the Washington State Appellate's Court's confusion in this case, the Washington State Supreme Court and its commissioner's confusion in this case. I've got a question that's not quite as facetious as it might sound. Are judges ordinary people? The reason I ask the question is, the due process argument is phrased as I think it must be. Is this a statute that ordinary people may understand unambiguously so they know what conduct is criminally prohibited? It's apparent that the Washington judges interpreted this statute in two different ways, each time expressing no great doubt about the ambiguity, but evidencing the ambiguity by deciding the statute, by interpreting the statute in two entirely contradictory ways. Now, what am I supposed to do with that? That the Washington judges are not ordinary people? I think that they are in many aspects ordinary people. I do think that lots of lawyers get hypertechnical. So the way — and all of our judges are lawyers. I think the way you know that in this case is that the jury didn't know what the heck it meant. There were four separate questions from the jurors on the instruction, which, according to the — the United States Supreme Court absolutely reflects the statute and Washington law. And four times they went to the judge and said, please help us understand the application of the law, the — and the facts in this case. And he gave the — I think the default answer, which finally was, refer to your instructions. So I think jurors are ordinary people for sure. We asked them to do extraordinary things, but they did not understand in this case. Counsel, did you — remind me, did you take a direct appeal to the Supreme Court from the Washington Supreme Court? I was counsel on the initial briefing in the direct appeal to the Washington State Supreme Court, but I hope you're not going to ask me what issues we raised. No, no, no. I'm asking — I'm asking whether you took — whether you took a direct appeal to the U.S. Supreme Court before you sought habeas. You'd have — Mr. Sampson may actually know the answer to that better. I left the case at a certain point and am now back on it. I don't — I don't remember that you did. I don't think so. And I don't mean you personally, but I understand. No, I don't think Mr. Sarasot did, but I can't answer you with any accuracy. The problem that we face is, of course, that we're now — is that we've got — we've got an AEDPA standard, which is a very, very strict standard, and the Court's reminded us that again and again and again this term. And so we're here only to correct the errors of the Washington Supreme Court if they are sort of open and notorious, if they are so obvious that had the Washington Supreme Court paused for a minute and looked at a particular Supreme Court case, they would have thumped their head and said, well, duh, obviously we're wrong. Now, have you got such a case? And if not, I'm suggesting your remedy may have been to take this to the U.S. Supreme Court on the question of whether the law in — whether the law in this case was void for vagueness. I can find no case that presents the kinds of facts that have been presented under an United States Supreme Court that seems to be on all fours. There are innumerable cases that state the general principle, however, so I don't think the law is yet that I have to have a brown cow case. There is — the one case that — there are two cases that sort of come close, the one from Texas, which its name is escaping me now, and then the case regarding the — where the Supreme Court actually, in a different era, wrote in the mens rea requirement for the food stamps, that persons of reasonable, ordinary understanding of the law would not have to understand that you would knowing — you'd have to know that you were violating the law when you bought food stamps. Here, the person who was unreasonable, though, is the Washington State Supreme Court Commissioner. Because of this — and I know that you have to take the Washington State Supreme Court's determination of what State court law means as correct. I don't think he was correct, but what he said, even after the direct appeal in this case, the Roberts and Cronin's decisions, the reformulation of accomplice liability law in Washington and the court of appeals opinion in this case was, he said, it does not offend principles of accomplice liability to hold responsible one who knowingly aids such conduct when the substantial risk of death results in actual death. I don't think that's what the law is in Washington. I think he got it wrong, but — Let me ask you this. Can I ask it this way? The cases on the issues that we decided, leaving this due process issue undecided, but the issue on which this panel reversed was that as things were presented at trial, the state was relieved of one of the burdens of proof of one element of the crime because it appeared to us, at least two of us, that there was a very strong argument that the jury understood the law, as indeed the Washington court of appeals understood the law on direct appeal, to say that in for a dollar meant exactly what the prosecutor thought it meant. So at that point, we were focusing on what happened at trial. The due process analysis focuses on what was the state of the law at the time of Mr. Sarasot's action. And the state of Washington law then. Was it clear under Washington law then whether accomplice liability made you liable for whatever crime your accomplice — whatever crime your principal committed so long as you knew that he intended to commit some crime? Or was it clear that you were liable as an accomplice only for what he — you knew he intended to do? Or was it unclear as between those two? It was absolutely unclear. And in fact, what had happened was the statute said you had to have accomplice liability as to the crime. The crime meaning the general crime that the principal intended. The jury instructions, it had been so unclear that the jury — Yeah, I'm not so interested in the jury instructions. I'm trying to figure out what the law is. Right. And what I'm after is if the Washington court of appeals on direct appeal says it means one thing and the Washington Supreme Court later says it means another thing, choosing both of the two alternatives at two different times, both of them subsequent at the time that Mr. Sarasot engaged in whatever act he did. It seems to me patent if judges are the equivalent of ordinary people for purposes of this analysis that the law was not clear on the point at issue. It was not clear. It had confused the jury. It had confused the judges. It had confused the WIPC committee. I was just trying to point out that the law said one thing. The WIPC committee adopted a jury instruction that said something else. Okay. But now I've got another problem. Okay. I've got the United States Supreme Court. Yes. That's a big problem. I didn't mean to agree that they're a problem, Your Honor. No, I mean, it is a problem, as I view in this case. I have to say, I mean, I won't hide my feelings on this case. Yes. I think that Justice Souter has it absolutely right when he charged that they are playing make-believe with the record. I, you know, I added it up. I think there's seven of us who agree that the evidence was exceedingly thin. Seven of us. I shouldn't include myself with the judges, but it's that I think Justice Thomas was wrong when he said it was an established case. The United States Supreme Court writes, this is not my majority opinion, it is impossible to assign any meaning to this instruction, which we've been told by Justice Thomas Parrott's statute, assign any meaning to this statute or this statute different from the meaning given to it by the Washington courts. I think they should say the meanings given to it by the Washington courts at different times. That sentence is totally incomprehensible to me. Or rather, I'll say that sentence doesn't accord with what happened here. But I'm stuck with the United States Supreme Court that has said this. So how do I deal with this? Well, I think you deal with it, one, by saying that not even Commissioner Crooks understood what the law to mean, because he, in a decision that's before you now, he went back to say that an ordinary person would know under Washington law that the theory is in for a dime, in for a dollar. And if that wasn't the theory, then what he did was, and he said Mr. Sarasot should have known that. He should have said that when he knowingly aids in such contact, that creates a substantial risk of death. And if it – he made a special exception for Mr. Sarasot here, because that's not the law. He says that's the law. That's not the law. It is ultimately a conundrum that the United States Supreme Court got wrong. And if – I'm – you see, I don't disagree with any of the things that I said. I know. I'm trying to find a theory. But I'm asking you this. How do I permissibly get to the point of saying it was unconstitutionally vague at the time of the Act, not at the time of trial, not in the jury instructions, but at the time of the Act, in a way that is consistent with what the Supreme Court has done in this case? I think that it requires revisiting the confusion of the jury under a different rubric. I mean, the United States Supreme Court was not considering the due process problem, which is what does a person of ordinary understanding know about accomplice liability in Washington. They were talking about sufficiency of the evidence. And that, with all due respect to Mr. Sampson, is what they want you to say, that that equates to sufficiency of the evidence, because if you look at Mr. Sampson's brief, he keeps talking about how the evidence is sufficient to show that Mr. Sarasot knew that a murder was going to happen. But that's not what the Commissioner found was the law of the State of Washington at the time. He found that all you had to know was a substantial risk of death occurring. And that's what's unreasonable. A person of ordinary understanding of the law would never understand this confusion. Kennedy. Do you want to save your last two minutes? I would. Thank you so much. May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent. And I think, Your Honors, first a quick response to Your Honors' question about whether there was a cert taken on direct appeal. I do not believe there was. The issue is resolved by the Supreme Court's ruling in this case. What issue is resolved? This issue is resolved. The issue of whether or not the statute is void for vagueness is resolved by the Supreme Court's determination, as Your Honor pointed out, that the instructions which quoted verbatim from the statute, by its plain terms, says that to be guilty of an accomplice of the crime of murder, you have to have acted, knowingly acted, in a manner that will facilitate or promote the commission of the crime of murder. Let me read to you again the sentence that the Supreme Court wrote and the sentence that you quote in your brief quite understandably. The sentence is, and I'm just reading from Justice Thomas' majority opinion, it is impossible to assign any meaning to this instruction different from the meaning singular given to it by the Washington courts. That sentence, given the record in this case, is nonsense. We had two different meanings given to this statute by different Washington courts. Do you agree that we had two different meanings given to this statute by different Washington courts? I agree that the decision on the first direct appeal by the Washington Court of Appeals was not an accurate... No, and I'm asking you, I'm not asking accurate or inaccurate at the moment. I'm asking, did we have two different interpretations of this statute by two different Washington courts? First, Washington Court of Appeals on direct appeal. Second, Washington Supreme Court in the Roberts case. The Washington Court of Appeals on direct appeal did say that to convict Mr. Sarasod, to determine whether there was sufficient evidence to convict him, the prosecution did not have to prove that he knowingly aided in the commission of the murder. That was in error. And then the court, in light of Roberts and Cronin by the State Supreme Court, reevaluated that. So if you want to say, did they have two different interpretations of the statute, they, you could say that. You could say that. And would it be true if I were to say that? But that... Would it be true? I will say that that was, that would be true. Okay. But that's not the issue. The issue under the law is whether, under the void for vagueness standard, is whether an ordinary person can understand what conduct is prohibited. And the courts, the Supreme Court has said, you don't have to have consummate perfection in determining what is prohibited. It's more of a rough idea of what is prohibited. So if I steal, it doesn't matter that I'm charged with murder? No, Your Honor, because although the first court of appeals decision was erroneous, it was erroneous in a broader sense, not in a narrower sense. So they weren't saying that your conduct wouldn't be a crime if you didn't knowingly aid in the commission of a murder and instead knowingly aided in the commission of an assault. They said that would be a crime. Here, then, they corrected themselves and said, no, you have to knowingly have aided in the commission of a murder, and that's what Mr. Sarasot did. And so the statute, when applied to his actual conduct, and that is the test, is not whether it's void for vagueness in some general hypothetical sense, whether his conduct fell within the statute. And it did, and we are bound by what the Supreme Court says. Now, when you say his conduct fell within the statute, what was his conduct as you're now referring to his conduct? His conduct, as determined by the U.S. Supreme Court, was there was sufficient evidence to constitutionally prove, and the jury, in fact, found him guilty under that standard of acting with knowledge that he was aiding in the commission of the crime of murder. Well, there was sufficient evidence if that's what the jury thought it was deciding. And we know that is what the jury thought it was deciding because the Supreme Court said that is what the jury was deciding. And I'm waiting for the Supreme Court to tell me the moon is made of green cheese, too. And I understand, but, Your Honor, that is the law of the case. That is the law that is binding on this court. And in looking at this case, that is what we have to proceed with. And I understand there is disagreement about whether the instructions were plain. I understand there's disagreement as to whether the evidence could prove that Mr. Sarasota acted with the requisite knowledge that he was aiding in the commission of the crime of murder. But the Supreme Court has said that's what the jury was required to prove. That's what the instructions required. The instructions are almost identical to the statute. There's just one word difference that really doesn't matter. That's what the prosecutor argued, according to the U.S. Supreme Court. And there was constitutionally sufficient evidence. So we have to take this case as if the jury found that he, with knowledge that he was aiding in the commission of the crime of murder, drove his car in a manner that facilitated the commission of that. And when you look at that conduct, a person of ordinary intelligence, and I would include attorneys and judges in that mix, would, maybe not always rational, but they are ordinary. They are people. We are. And when you look at it that way, they could see that a person who knows his passenger is armed with a gun and is intending to shoot a group of kids and then drives his car in a manner that facilitates that shooting to shoot and kill the kids, that person could know his conduct is prohibited by the statute. How do you explain the repeated questions by the jurors as to what accomplice liability meant and make that into a consistent story that they knew exactly what they were doing and that they were deciding that he intended to kill because he knew that the shooter intended to kill, when the jury has asked repeatedly as to whether or not, I'll kind of paraphrase it, as to whether or not the prosecutor's statement of the law, in for a dime and for a dollar, was good law. And the judge refused repeatedly to answer the question. Your Honor, I actually, in preparing for the Supreme Court argument, we looked very carefully at those jury questions. And so did I. And actually, there were only three that really went to accomplice liability. And really only one that went to that exact issue. Some of them dealt with accomplice liability in general, but not all four of them did. Okay. And so they only asked once to show their confusion. And I would submit that under the case law and under this Supreme Court's decision in this case, which we have. You know, I'm inclined to agree with Mr. Bumble. You know, Mr. Bumble? No, Your Honor. Read Oliver Twist. Oh, yes, Your Honor. Okay, I understand now. I'm sorry. But the jury is presumed that when the judge told the jury, read your instructions. And again, the four questions weren't all the same questions. They were actually different questions. So it wasn't the jury coming back and asking the same question four times. And the jury is presumed that when the judge says, read this instruction, then the jury reads the instruction and the jury is presumed to have understood the instruction at that point. Let me ask you this. And this is not a hostile question. It's actually a question that might work to your advantage. I'm trying to figure out ambiguity about prohibited conduct. Under either reading of the statute, the reading of the Washington Court of Appeals on direct appeal, or the later reading of the same statute by the Washington Supreme Court in the Roberts case, I mean, we have two different reasons for the same statute. Under either reading of the statute, Sarah Saud is guilty of a crime. Correct. The question is, which crime? Correct. Does the void for vagueness doctrine apply when we're trying to choose which crime he's guilty of rather than whether we're trying to choose whether he's guilty of a crime or not guilty of anything? Your Honor, I think it is not void for vagueness because under either reading of either the Washington Court of Appeal on direct appeal or the Washington Court of Appeals and the Washington Supreme Court in the collateral proceeding, he is guilty under either reading of murder in the second degree. No, no, no. You're not with me. I want to say that under one reading, he's guilty of assault as an accomplice because that's all he thought Ronquillo was going to do. I mean, we could disagree as to the facts. I understand. But under the other reading, he's guilty of murder because he thought that Ronquillo was going to shoot. So my question to you is, does the void for vagueness doctrine with respect to the statute must be understandable to an ordinary person of reasonable intelligence apply to a case where under either reading he's guilty of some crime or does it only apply to a situation in which under one reading he's not guilty of anything and under the other reading he's guilty of a crime? Assuming, and I understand that that presents a sort of a hypothetical. You're right. Yes. I'm not asking you to agree on the factual. I would say that it does not apply. Because? Because he is aware that his conduct is criminal and he should not engage in that conduct. And it also, there's never been a claim of the second prong that it's discriminatory or arbitrary to apply it in this fashion. The claim is always. You're now addressing the equal protection argument? No, I'm addressing the two standards for void for vagueness is one, could an ordinary person understand? And two, is it arbitrary or a discriminatory application? And I would say that under the first prong, if the person knows, even under an erroneous reading of the statute, that their conduct is criminal and they should not engage in that conduct, that satisfies due process. Now, what is the particular? Even though the difference in punishment might be 27 years compared to five. To the extent that the. . . Or two. I don't know what the sentence would have been had he been convicted of accomplice liability for assault. Yes, Your Honor. To the extent that the purpose of that due process requirement is so that innocent people don't engage in conduct no one would know is criminal, it's clear that under either reading, the conduct is criminal. And then you're talking about what is the degree of criminal culpability. And so I think to that extent, the void for vagueness. . . Did you make that argument in your brief? Not that particular argument. We relied on the more this is what the Supreme Court has said and this is what we're faced with. But I think another important fact that hasn't really been discussed is this was an alternative claim, the alternative claim to the claim that there was insufficient evidence. Because Mr. Sarasota's counsel at the time, who was not Ms. Elliott, when they filed the petition had been arguing that, well, there's insufficient evidence to show my client knowingly aided in the commission of the crime of murder. But if the prosecution then comes back and says, well, we don't have to prove that he knew he was committing a murder, we only have to prove that he was committing some lesser crime, then I don't have fair notice. Yeah, well, but that's exactly what happened and that was the argument that was made to the Washington Court of Appeals on direct appeal. And I understand Your Honor's position that that's what happened, but as this case . . . It jumps out at you that that's what happened. All you've got to do is read the opinion of the Washington Court of Appeals on direct review. But as this case stands before the court now, that is not what happened. What happened was Mr. Sarasota was not convicted because he knowingly aided in the commission of a lesser crime. He was convicted because he knowingly aided in the commission of the crime of murder. Yeah, here we go back down the rabbit hole. I understand, Your Honor. And again, applying the highly deferential standards of 2254D to this case in light of the holdings of the U.S. Supreme Court in this case, the State court can reasonably determine that the statute gave Mr. Sarasota reason . . . Well, you know my view of the case. If the jury had been properly instructed, I think there was enough evidence from which the jury could have concluded that he knew that this is what Mr. Ronquillo intended to do. My entire problem is that it's just patent. It just jumps out at you that nobody knew, including very well-educated lawyers, judges on the Washington appellate courts, what the statute meant. And the prosecutor argued very eloquently, in for a dime, in for a dollar. I hold some guy and so . . . Because my friend has said I want to hit him. I hold him and he shoots him. The prosecutor says, tough luck, you're guilty for murder. There is no ambiguity about that. Well, Your Honor, and again, I disagree with what the prosecutor said. I don't think the prosecutor said that. I think the prosecutor . . . You don't think the prosecutor said that? I don't think the prosecutor's use of the term in for a dime, in for a dollar, was the meaning that . . . Go back and read that argument. It's inescapable that that's what that means. Well, Your Honor, the . . . I thought the prosecutor was actually very eloquent in that description of what that meant. The prosecutor told the jury that all three defendants had premeditated intent to kill. The prosecutor told the jury that Mr. Sarasota knew that fistfights would not work, knew insults would not work, that shooting would work. The prosecutor repeatedly asserted to the jury that he knew Mr. Ronquillo was going to shoot when they drove to the school. That's a question of proof. That's not a question of what the law is. I'm taking you over on that. You are over. Thank you. I'm just venting it. It's not your fault. I understand, and I would ask the Court of Firms. Thank you, counsel. I just have a couple of brief comments. I think maybe the case would have come . . . I mean, the United States Supreme Court didn't get to this issue. And sure, you can say that as a matter of language, the statute is clear. But the confusion, as Judge Fletcher, you point out, is manifest from the record about how the law applies to the facts and what the law was. So I don't think you can say it's clear in any way. I would submit that we have made the discriminatory or the second part of the test, which is it encourages arbitrary and discriminatory conduct because even after Roberts and Cronin in this very case on ER 63, the court commissioner once again reverts to in for a dime, in for a dollar. He said, sure, he needs to facilitate the particular conduct formed by the principle, which had to be intent because that's what premeditated murder required. But he says it doesn't really offend the principles of accomplice liability to hold him responsible for conduct that results in a substantial risk of death. That is absolutely pigging out and applying an exclusion because of the application here for Mr. Sarasot that is different from that of everyone else. And the ambiguity again rears its head despite all of the discussion that came before. So it's important to note that that and Ms. Novotny made it clear in her objections to the reporting recommendation. We're not talking about murder here. We're talking about the drive-by shooting that the commissioner said he was guilty of and, in fact, the court of appeals also said. So on that basis, I'd ask the Court to reverse the due process. Thank you, counsel. The case is derogated and will be submitted. The Court will stand in recess for the day. Thank you. This court for this session stands adjourned.
judges: Reinhardt, W. Fletcher, Bybee, Cjj